I respectfully dissent. I would affirm the trial court's denial of State Farm's renewed motion for a judgment as a matter of law because I believe Shady Grove Baptist Church presented substantial evidence to submit to a jury the issue whether the collapse of the church building's roof was a result of any of the causes covered by the Church's insurance policy with State Farm.
At trial, the Church presented the following evidence, from which a jury could have resolved the dispute in the Church's favor. Preston Walker, a former trustee, deacon, and pastor of the Church, testified that at his home in Sipsey, one block from the church, he "could kind of feel a rumble sometimes" from blasting activity at strip mines in the area. In his deposition, admitted into evidence at trial, Hugh Walker stated that one of his neighbors had experienced "cabinets and things" rattling from the blasting. Hugh Walker also stated in his deposition that he didn't know what happened to the roof: "It just fell in." But when pressed as to his opinion as to the cause of the collapse, he said, "Old and it could have been blasting and termites. It *Page 1047 
could have been anything. I don't know. I just don't know." Walker stated in his deposition what he may have told the State Farm inspector about the cause of the collapse: "I could have said blasting or something." Walker stated in his deposition that, in the past, he had seen broken rafters on other people's houses and that those people had said that the cause of the broken rafters was "coming from blasting."
Joann Lewis, the Walkers' sister and the chairman of the Church's building committee, testified at trial that blasting in Sipsey sometimes "rattled the dishes, you know, no kind of effects in my house. It was just like a rattle." Ms. Lewis responded affirmatively when she was asked whether there had been occasions at her house and at the church building where the wind and rain were heavy and where sleet and snow "piled up on the roofs" of her house and the church. Ms. Lewis also described what she and other church members observed after the collapse:
 "[W]e were just looking around in it, none of us being skilled in the area but, you know, you could pick up pieces of wood or you could walk to areas where someone would say, well, those are termites, termites have eaten it, but as far as experts or skilled people knowing, we were just looking."
Harold McCain, a former member and trustee of the Church testifying forState Farm, testified on cross-examination that when he arrived at the church building after the roof had collapsed, he "was told it was done through blasting, that through a mining company doing blasting was the first thing I heard." After the collapse, McCain was told what others thought had caused the collapse: "I was told it was due to blasting, and I pursued it in the sense of blasting, so I didn't feel that the insurance company [had any] liability to take care of it if it was a blasting company that caused the problem."
Joel Wehrman, an engineer employed by JADE Engineering sent by State Farm to inspect the collapsed church building, testified that when he went to see the church building after the collapse, "that's when I learned that many of the people there believed that the blasting from a coal mine had caused or contributed to the damage." More specifically, Wehrman stated that "the only thing anyone ever told me was there was a coal mine, I believe, it was south of the building and that there was some vibrations in the area, that several people felt had caused the collapse."
Such evidence would be — and was — weighed by the jury, but I believe the majority errs in holding that the evidence is not substantial and therefore not sufficient to present to a jury the issue whether the collapse of the roof was covered by the Church's insurance policy.